UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

———————————

N₀ 20-CV-2057 (RPK) (RER)

———————————

ALI SIMHAQ,

Plaintiff,

VERSUS

KID CARTER TOURING, INC. AND AARON CARTER,

Defendants.

———————————

REPORT & RECOMMENDATION

August 11, 2021

———————————

TO THE HONORABLE RACHEL P. KOVNER
UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**[1]

On May 6, 2020, Plaintiff Ali Simhaq ("Simhaq" or "Plaintiff"), brought this copyright infringement action against defendants Aaron Carter ("Carter") and Kid Carter Touring, Inc. ("Kid Carter Touring") (collectively, "Defendants"), pursuant to the Copyright Act, 17 U.S.C. § 501, and the Digital Millennium Copyright Act (the "DMCA"), 17 U.S.C. § 1202(b). (Dkt. No. 1 ("Compl.") ¶¶ 18–22, 23–25). Currently before the Court is Plaintiff's motion for a default judgment, (Dkt. No. 14 ("Pl.'s Mot.")), which Your Honor referred to me for a report and

---

[1] Jessica Lagnado, a rising second-year student at Fordham University School of Law and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

1

recommendation, (Order dated 2/18/2021). For the reasons discussed below, I respectfully recommend that Plaintiff's motion for default judgment be granted, and that Plaintiff be awarded $1,325 in actual damages, $5,000 in statutory damages, $895 in attorney's fees and costs, and post-judgment interest.

## BACKGROUND

Plaintiff, a professional artist from the Maldives,[2] created a painting of a "cosmic lion" (the "Painting") that was first published on or about May 10, 2014. (Compl. ¶¶ 5, 8; Dkt. No. 16 ("Simhaq Decl.") ¶ 4). At the bottom center of the Painting, Plaintiff included his watermark. (Compl., Ex. A; *see* Compl. ¶ 9).

Carter is the president of Kid Carter Touring. *Registration Form*, CALIF. SEC'Y OF STATE, https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=03917623-20894527 (last visited August 9, 2021). Plaintiff alleges that Defendants each own and operate Carter's Instagram account and merchandise websites (collectively, "websites").[3] (Compl. ¶¶ 6–7).

In September 2019, Defendants allegedly removed Plaintiff's watermark and posted the Painting on Defendants' websites to endorse merchandise without Plaintiff's permission. (Compl.

---

[2] Pursuant to the Berne Convention, works are protected under the copyright law of the country in which the infringement occurred. 17 U.S.C. §§ 101–102(a)(5), 104. The Agreement on Trade–Related Aspects of Intellectual Property Rights ("TRIPS"), which both the United States and Maldives joined, mandates the implementation of the Berne Convention's first twenty-one articles. *See* Agreement on Trade-Related Aspects of Intellectual Property Rights, pt. 2, § 1, art. 9.1, Apr. 15, 1994, Marrakesh Agreement Establishing the World Trade Organization, Annex 1C, 1869 U.N.T.S. 299, 33 I.L.M. 1197 (1994); 19 U.S.C. § 3511(d)(15); *Golan v. Holder*, 565 U.S. 302, 312–14 (2012); *see also Members and Observers*, WORLD TRADE ORGANIZATION, https://www.wto.org/english/thewto_e/whatis_e/tif_e/org6_e.htm (last visited August 9, 2021). This Court may take judicial notice of the World Trade Organization's website "because it is readily available and its accuracy 'cannot be reasonably questioned.'" *Prokos v. IQ Homes & Co. Inc*., No. 20-CV-1220 (EK) (RER), 2021 WL 982878, at *1 n.5 (E.D.N.Y. Feb. 11, 2021) (quoting FED. R. EVID. 201(b)(2)), *adopted by* 2021 WL 980869 (Mar. 16, 2021).

[3] Website links: www.Instagram.com/AaronCarter, www.LoveCollection.Store, and www.AaronCarter.com.

¶¶ 12, 14, 17). Defendants' post of the Painting garnered about 15,000 "likes" on Instagram before it was removed. (*Id.* ¶ 13).

Plaintiff confronted Defendants via social media to inform Carter that he created the Painting and did not give permission to Defendants to post the image. (Compl. ¶ 14; Compl., Ex. C). In response, Carter posted on several of his own social media accounts profane statements about Plaintiff and his work.[4] (Compl., Ex. C). After this interaction, Plaintiff registered the Painting with the United States Copyright Office and brought suit. (Simhaq Decl., Ex. B; Compl.).

Plaintiff alleges that Defendants infringed upon his copyright pursuant to the Copyright Act and violated § 1202(b) of the DMCA by removing Plaintiff's watermark from the Painting. (Compl. ¶¶ 19, 24–25). Plaintiff seeks actual and statutory damages as well as attorney's fees and costs, and post-judgment interest. (Compl. at 5–6; Dkt. No. 14 ("Pl.'s Mot.") at 1–2). Defendants were served with the Summons and Complaint on May 12, 2020,[5] (Dkt. Nos. 7–8), but failed to answer or otherwise to the Complaint within twenty-one days. Accordingly, the Clerk of Court entered default, (Dkt. No. 10), and Plaintiff subsequently moved for entry of default judgment,[6] (Pl.'s Mot.). Your Honor then referred Plaintiff's motion to me for a report and recommendation. (Order dated 2/18/2021).

---

[4] During the exchange on social media, Carter claimed that Defendants paid for a license to use the painting through third party companies Shutterstock and Shutterfly. (Compl. ¶ 15). However, Plaintiff contacted Shutterstock and Shutterfly and was informed that the websites never had the Painting, nor did they license the Painting to Defendants. (*Id.* ¶ 16).

[5] Although Defendants are not citizens of New York, this Court has personal jurisdiction over Defendants pursuant to the New York long-arm statute as Defendants have transacted business within the state. *See* N.Y. C.P.L.R. § 302(a)(1); (Compl. ¶ 3; Ex. B at 4).

[6] Plaintiff did not submit an affidavit proving service of the Motion and supporting papers, failing to comply with the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Loc. Civ. R. 55.2(c). However, Plaintiff indicated that the motion for default judgement was mailed to Defendants, (Pl.'s Mot. at 2); and therefore, I will proceed with the merits.

## **LEGAL STANDARD**

"Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default by the [c]lerk of [c]ourt, and second, the entry of a default judgment." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011*)*). The initial step formally recognizes that a defendant has admitted to the alleged facts through its failure to defend the action. *Mickalis Pawn Shop*, 645 F.3d at 128. The second step, entry of a default judgment, is a final order, thereby ending the litigation process and granting the plaintiff relief. *Id.*

In considering default judgment, a district court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). However, "a district court need not agree that the alleged facts constitute a valid cause of action." *Mickalis Pawn Shop*, 645 F.3d at 137 (quoting *Au Bon Pain*, 653 F.2d at 65). Therefore, after examining the facts, the district court must make a conclusion as to liability. *Finkel*, 577 F.3d at 84. Additionally, the court does not accept as true allegations about damages. *Mickalis Pawn Shop*, 645 F.3d at 128. Rather, it is the court's responsibility to determine that damages have an evidentiary basis. *Cement and Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.,* 699 F.3d 230, 234 (2d Cir. 2012); *see also* Fed. R. Civ. P. 55(b)(2). To make this determination, the court may hold a hearing or rely on affidavits and other documentary evidence submitted by the plaintiff. *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

# DISCUSSION

### I. Liability

Plaintiff brings this action against Defendants for copyright infringement and for removing Plaintiff's signature from his painting and posting is artwork to their websites without permission. (Compl. ¶¶ 1, 12).

#### A. Plaintiff Established Defendants' Liability Under The Copyright Act.

To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Regarding the first element, "a certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright" so long as it is registered within five years of the first publication of the work. *PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.*, 226 F. Supp. 3d 206, 215 (S.D.N.Y. 2016) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999)); *see also MerchDirect LLC v. Cloud Warmer, Inc.*, No. 17-CV-4860 (RRM) (ARL), 2019 WL 4918044, at *7 (E.D.N.Y. Sept. 30, 2019); 17 U.S.C. § 410(c).

Although Plaintiff provided a certificate of registration under the seal of the Copyright Office, Plaintiff's certificate was not effective until November 4, 2019, just over five years after its first publication on May 10, 2014. (Simhaq Decl., Ex. B). Because registration was not timely, this Court has discretion over how much evidentiary weight to give to the registration certificate. *See Telerate Sys., Inc v. Caro*, 689 F. Supp. 221, 227 (S.D.N.Y. 1988). However, because Defendants

have failed to offer evidence showing that the certificate of registration is invalid, Plaintiff sufficiently established his valid ownership of the copyright. *See Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 589 F. Supp. 2d 375, 382 (S.D.N.Y. 2008) (considering certificate of registration issued more than five years after publication prima facie evidence of valid copyrights because defendant did not offer evidence suggesting invalidity), *vacated in part on other grounds*, 2009 WL 969928 (Apr. 7, 2009); *Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2d 506, 515–16 (S.D.N.Y. 2003) (same); *Telerate Sys.*, 689 F. Supp. at 227 n. 7 ("Even if the certificate were . . . issued more than five years after the actual date of first publication, the court would be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c).").

Under the second element, the copying of constituent elements of original work, "a plaintiff must allege a violation of the exclusive rights provided to a copyright owner under 17 U.S.C. § 106 and must meet a minimal burden to establish the work is original." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB) (SJB), 2019 WL 312149, at *6 (E.D.N.Y. Jan. 3, 2019), *adopted by* 2019 WL 291145 (Jan. 23, 2019). Plaintiff contends that Defendants violated his exclusive rights to his Painting by posting the image to numerous social media accounts without permission. (Compl. ¶¶ 14, 17). To support this assertion, Plaintiff provides the Court with screenshots of Defendants' Instagram account displaying the Painting and of their subsequent online communications, demonstrating that Plaintiff did not consent to Defendants' use of the Painting. (Compl., Exs. B–C). These screenshots are sufficient to show that Defendants copied Plaintiff's work. *See Reilly v. Plot Commerce*, No. 15 Civ. 5118 (PAE) (BCM), 2016 U.S. Dist. LEXIS 152154, at *12, 16 n.7 (S.D.N.Y. Oct. 31, 2016) (holding that screenshots were sufficient

to show that defendant displayed plaintiff's photograph on website without permission), *adopted by* 2016 U.S. Dist. LEXIS 160884 (Nov. 21, 2016); *see also Korzeniewski* 2019 WL 312149, at *6.

Finally, originality applies to work that has been "independently created by its author, . . . and . . . comes from the exercise of the creative powers of the author's mind." *Dermansky v. Tel. Media, LLC*, No. 19-CV-1149 (PKC) (PK), 2020 WL 1233943, at *3 (E.D.N.Y. Mar. 13, 2020) (quoting *Boisson v. Banian. Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001)); *see also Sheldon v. Plot Com.*, No. 15-CV-5885 (CBA) (CLP), 2016 WL 5107072, at *11 (E.D.N.Y. Aug. 26, 2016), *adopted by* 2016 WL 5107058 (Sept. 19, 2016). Because Plaintiff asserts in his complaint that he is the creator of the Painting, (Simhaq Decl. ¶ 3), he has adequately alleged a claim for copyright infringement, *see Pasatieri v. Starline Prods., Inc.*, No. 18-CV-4688 (PKC) (VMS), 2020 WL 207352, at *3 (E.D.N.Y. Jan. 14, 2020) (originality of photograph can be inferred from claim to be author of photograph, as well as allegations of its unique elements); *Korzeniewski*, 2019 WL 312149, at *6 (holding that plaintiff's allegations that he is sole creator of unique image is sufficient to establish originality).

Accordingly, Plaintiff has established that Defendant's posting of the Painting without permission was copyright infringement and Plaintiff may pursue damages.

B. <u>Plaintiff Established Defendant's Liability Under The DMCA</u>

In order to plead a violation of the DMCA, a plaintiff "need only allege: (1) the existence of Copyright [M]anagement [I]nformation [("CMI")] on the work in question; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Dermansky*, 2020 WL 1233943, at *3 (quoting *Sheldon*, 2016 WL 5107072, at *13). CMI is any identifying information of the: (1) work, such as the title of the art, (2) author, such as their name,

or (3) copyright owner. 17 U.S.C. § 1202(c)(1)–(3); *see also BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010).

Plaintiff's complaint establishes that Defendants violated the DMCA. First, Plaintiff provided an image of the Painting containing a watermark attribution of his name in a square at the bottom center of the Painting. (Compl., Ex. A; Simhaq Decl. ¶ 4). Next, Plaintiff also submitted screenshots of Defendants' websites containing the Painting without the boxed watermark. (Compl., Ex. B). Both the posting of the Painting and the removal of the watermark was done without Plaintiff's consent. (Compl. ¶¶ 14, 17, 26). Lastly, Plaintiff alleges that "alteration and/or removal of said copyright management information was made by Defendants intentionally, knowingly and with the intent to induce, enable, facilitate, or conceal their infringement of Plaintiff's copyright in the Painting." (*Id.* ¶ 27). Taken as true, these allegations establish liability under the DMCA. *See, e.g.*, *Dermansky*, 2020 WL 1233943, at *3–4 (citing *Reilly*, 2016 WL 6837895, at *6).

## II.   Damages

Plaintiff seeks the following relief in connection with the default judgment against both Defendants, jointly and severally: $1,325.00 in actual damages, $5,000.00 in statutory damages, $455.00 in attorney's fees, $440.00 in costs, and post-judgement interest. (Dkt. No. 15 ("Freeman Decl.") ¶¶ 17–19).[7] However, although a party's default constitutes a concession of well pleaded allegations of liability, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101

---

[7] James H. Freeman ("Freeman") is an associate at Liebowitz Law Firm, PLLC and counsel of record for Plaintiff. (Freeman Decl. ¶ 1).

(JFB) (GRB), 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations omitted), *adopted by* 2012 WL 1354481 (Apr. 13, 2012); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Therefore, "[t]he court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878 (RJD) (JMA), 2007 U.S. Dist. LEXIS 99935, at *5 (E.D.N.Y. Sept. 11, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)), *adopted by* 2007 U.S. Dist. LEXIS 72789 (Sept. 28, 2007).

### A. Plaintiff Is Entitled to Actual Damages Under The Copyright Act

An artist whose copyright has been infringed upon may choose to receive (1) the actual damages suffered plus additional profits *or* (2) statutory damages. 17 U.S.C. § 504(a). Statutory damages, however, are only available to copyright owners who registered their copyrights "[three] months after the publication of the work or [one] month after the copyright owner . . . learned of the infringement." 17 U.S.C. § 412. Here, Plaintiff properly seeks only actual damages under the Copyright Act, (*see* Pl.'s Mot. ¶ 3), as his copyright for the Painting was registered over five years after its first publication and over one month after Plaintiff learned of the infringement, (Simhaq Decl., Ex. B).

A court may base the amount awarded for actual damages on the fair market value of the licensing fee or the sale that the copyright owner would have made but for the infringement. *See Madden v. DreamWorks, LLC*, No. 07-CV-5273 (ARR), 2009 WL 10706573, at *3 (E.D.N.Y. July 6, 2009). The amount of actual damages may not be based on "undue speculation," but must rely on a reasonable basis for computation. *Davis v. Gap Inc.*, 246 F.3d 152, 166–67 (2d Cir. 2001).

9

Plaintiff seeks $1,325.00 in actual damages based on benchmark license fees of a similar painting charged by the stock photography agency, GettyImages.com ("Getty Images"). (Freeman Decl. ¶ 22). The photograph on Getty Images' website is similar to Plaintiff's photograph, though the Court notes a somewhat different artistic style in depicting the image of a lion. (*Compare* Simhaq Decl., Ex. A., *with* Ex. C). However, Plaintiff is a professional artist and maintains that he would charge $1,325 to license the Painting. (Simhaq Decl. ¶ 8; Compl. ¶ 1). Having provided the Court with some documentation supporting the calculation of his lost licensing fee for image use on a corporate or promotional cite, including social media accounts, for up to five years, I respectfully recommend Plaintiff be awarded $1,325 in actual damages. *See Ozuzu v. Function(x), Inc.*, 18 Civ. 6799 (ER), 2020 WL 4926247, at *1–2 (S.D.N.Y. Aug. 21, 2020) (awarding actual damages of $1,500 based on Getty Images licensing fee of a similar photograph); *Madden*, 2009 WL 10706573, at *3 ("[C]opyright owner may support an 'actual damages' award under 17 U.S.C. § 504(b) by establishing a 'fair market value' for a lost licensing opportunity.").

B.  <u>Plaintiff Is Entitled to Statutory Damages Under The DMCA</u>

"Civil plaintiffs injured because of a DMCA violation may seek either actual damages or statutory damages of $2,500 to $25,000 per infringement." *Mango v. Buzzfeed, Inc.*, 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020); 17 U.S.C. § 1203(c). While a plaintiff is barred from recovering twice for the same injury, where the defendant "'both unlawfully reproduced the [p]hotograph and altered the embedded copyright information,' plaintiff is entitled to damages under each statute." *Wexler v. Synergy Prep, Inc.*, No. 20-CV-2672 (CBA) (SMG), 2021 WL 260635, at *3 (E.D.N.Y. Jan. 3, 2021) (quoting *Reilly*, 2016 WL 6837895, at *8), *adopted by* 2021 WL 260101 (Jan. 26, 2021); *see also Agence France Presse v. Morel*, No. 10 Civ. 2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014) ("[I]n an

appropriate case, separate DMCA and copyright awards may be permissible."). Here, Plaintiff seeks $5,000 in DMCA statutory damages. (Freeman Decl. ¶ 18); *see* 17 U.S.C. § 1203(c)(3)(B). In determining DMCA statutory damages, the Court must look towards the circumstances of the violation, including the willfulness of the defendants, the number of acts of infringement, and deterrence value. *Mango*, 356 F. Supp. 3d at 378; *Agence France Presse*, 2014 WL 3963124, at *10; *see also Dermansky*, 2020 WL 1233943, at *6.

When a defendant defaults, "the [c]ourt may infer that [the] infringement was willful." *Malibu Media, LLC v. Doe*, No. 18-CV-6432 (DRH) (SIL), 2020 WL 2736723, at *3 (E.D.N.Y. Apr. 7, 2020) (citing *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011), *adopted by* 2020 WL 2734900 (May 26, 2020). However, the court must also consider the additional circumstances. *See id.* Here, the Court weighs the singular act of infringement and Defendants' removal of the Painting after Plaintiff confronted them, with the evidence above of the lost licensing fee, and the deterrence value of awarding statutory damages. Although these factors lead to the conclusion that the infringing conduct was *de minimis*, a statutory award of is $5,000 appropriate. *Dermansky*, 2020 WL 1233943, at *6 (holding that *de minimis* infringement calls for awarding statutory damages "above the statutory minimum, to account for the willful actions of Defendant and the need to deter others—but well below the statutory maximum given the dearth of other evidence."). Therefore, I respectfully recommend Plaintiff be awarded $5,000 in statutory damages.

C. Plaintiff Is Entitled to Attorney's Fees

Pursuant to the DMCA, a court may, "in its discretion[,] . . . award reasonable attorneys fees to the prevailing party." 17 U.S.C. § 1203(b)(5).[8] "An award of fees is not automatic but 'lies within the sole and rather broad discretion of the Court.'" *Cuffaro v. Fashionisto LLC*, No. 19 Civ. 7265 (GBD) (KHP), 2020 WL 5077449, at *6 (S.D.N.Y. July 9, 2020) (quoting *Sheldon*, 2016 WL 5107072, at *18), *adopted by* 2020 WL 5076826 (Aug. 27, 2020). Considering Defendants' default and this Court's finding that Plaintiff brought a meritorious claim, it is reasonable to award attorney's fees and costs.

Courts in this Circuit use the "lodestar" method for calculating reasonable attorney's fees -- "the product of a reasonable hourly rate and the reasonable number of hours required by the case creates a presumptively reasonable fee." *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quotation omitted). A reasonable hourly rate should be determined by using the prevailing hourly rates in the district where the court sits. *Jeremiah v. H Squared Media Grp. LLC*, No. 18-CV-5572 (JMA) (AYS), 2021 WL 930223, at *3 (E.D.N.Y. Mar. 11, 2021) (quoting *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 155 (E.D.N.Y. 2013)). In this District, reasonable rates range from "$300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Prokos v. IQ Homes & Co. Inc.*, No. 20-CV-1220 (EK) (RER), 2021 WL 982878, at *6 (E.D.N.Y. Feb. 11, 2021) (quoting *Dermansky*, 2020 WL 1233943, at *7), *adopted by* 2021 WL 980869 (Mar. 16, 2021).

---

[8] The Copyright Act denies any award of attorney's fees where infringement of copyright commenced after publication and before registration of the copyright, unless registration was made within three months after publication. 17 U.S.C. § 412. Because Plaintiff registered copyright of the Painting over five years after first publication, Plaintiff may not recover attorney's fees under the Copyright Act. *See id.*; *Singh v. Famous Overseas, Inc.*, 680 F. Supp. 533, 535–36 (E.D.N.Y. 1988).

Freeman attests that his hourly rate is $350 and that he spent a total of 1.3 hours working on this case, resulting in $455 of total attorney's fees. (Freeman Decl. ¶ 29). Freeman is an associate at Liebowitz Law Firm, PLLC with almost twenty years of experience litigating more than 350 copyright enforcement actions. (*Id.*). Because the hourly rate of $350 per hour is "in line with typical rates in this district for similarly-experienced attorneys," I find it reasonable here. *See Mango*, 397 F. Supp. at 376 (approving $350 per hour for Freeman).

To determine the reasonableness of hours expended, the Court considers its experience, knowledge of the case, and the evidence and arguments presented. *Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*, 291 F. Supp. 3d 554, 562 (S.D.N.Y. 2018). Plaintiff provides records stating the date, description of services rendered, and time spent on each task. (Freeman Decl. ¶ 29). These records indicate that Freeman spent 1.3 hours on this matter.[9] Based on damages awarded in similar proceedings, the Court finds these hours reasonable for Liebowitz Law Firm, PLLC. *Cf. Mantel v. Smash.com Inc.*, No. 19-CV-6113 (FPG), 2019 WL 5257571, at *5 (W.D.N.Y. Oct. 17, 2019) (holding that three hours represents a reasonable number of hours on a motion for default judgement), *Bari v. Impremedia Operating Co., LLC*, No. 20-CV-310 (EK) (RER), 2021 WL 724904, at *5 (E.D.N.Y. Jan. 8, 2021) (same), *adopted by* 2021 WL 720705 (Feb. 24, 2021); *Lowery*, 2020 WL 5441785, at *6 (same). I therefore respectfully recommend that Plaintiff be awarded $455 in attorney's fees.

---

[9] Freeman's time spent on this matter is limited because he appeared as counsel of record after the Complaint was filed. (*See* Dkt. No. 12).

D. <u>Plaintiff Is Entitled to Costs</u>

Both the Copyright Act and the DMCA allow for the discretionary award of costs to a prevailing party. 17 U.S.C. §§ 505, 1203(b)(4). Courts in this district have found that costs for filing and service are recoverable in copyright infringement cases. *See, e.g.*, *Entral Grp. Int'l v. Sun Sports Bar Inc.*, No. 05-CV-4836 (CBA) (MDG), 2007 WL 2891419, at *12 (E.D.N.Y. Sept. 28, 2007) (internal citation omitted) (adopting R. & R.); *Zlozower v. Barlotta*, No. 11-CV-1555 (RER), 2012 WL 13098709, at *6 (E.D.N.Y. Apr. 3, 2012). Here, Plaintiff requests $440 in costs: $400 for the filing fee and $40 for the service fee.[10] (Freeman Decl. ¶¶ 28–29). I find that $440 in court filing and service of process fees are reasonable and supported by proof.[11] (Dkt. Nos. 1, 7–8). Accordingly, I respectfully recommend that Plaintiff be awarded $440 in costs.

E. <u>Plaintiff Is Entitled to Post-Judgment Interest</u>

Finally, although Plaintiff initially sought pre-judgment interest, (*see* Compl. at 6), he now seeks only post-judgment interest, (Pl.'s Mot. ¶ 6). Despite this inconsistency, courts in this District have previously construed a plaintiff's failure to pursue pre-judgment interest as abandoning that form of relief, and instead awarded post-judgment interest pursuant to 28 U.S.C. § 1961(a). *See Schwartzwald v. Zealot Networks, Inc.*, No. 19-CV-5979 (LDH) (SMG), 2020 WL 8187749, at *4 (E.D.N.Y. Dec. 27, 2020), *adopted by* 2021 WL 173996 (Jan. 19, 2021). Therefore, the Court respectfully recommends post-judgment interest be granted, calculated from the date on which the

---

[10] The executed Summonses support service fees of $110, (Dkt Nos. 7–8); however, pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Therefore, only the requested $40 will be awarded.

[11] The Court takes judicial notice of this District's filing fee. (*See* Dkt. No. 1 (noting "filing fee $ 400, receipt number ANYEDC-12758314")); *see also Philip Morris USA, Inc. v. Jackson*, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011) (taking judicial notice of this District's filing fee).

Clerk of Court enters final judgment until the date of payment. *See Hirsch v. F. Daily Inc.*, No. 18-CV-6531 (LDH) (SJB), 2021 WL 1158562, at *10 (E.D.N.Y. Feb. 9, 2021), *adopted by* 2021 WL 1163153 (Mar. 26, 2021).

## CONCLUSION

For the reasons set forth above, I respectfully recommend that Plaintiff's motion for default judgment be granted, and that Plaintiff be awarded a total of $7,220 made up of $1,325 in actual damages, $5,000 in statutory damages, and $895 in attorney's fees and costs, in addition to post-judgment interest. Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court within three (3) business days. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Rachel P. Kovner within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED

/s/ Ramon E. Reyes, Jr.
Hon. Ramon E. Reyes, Jr., U.S.M.J

Dated:   August 11, 2021
         Brooklyn, New York